CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

JEFFREY A. BACKHUS (CABN 200177)
Assistant United States Attorney

60 South Market Street, Suite 1200
San Jose, California 95113
Telephone: (408) 535-5080
FAX: (408) 535-5066
jeffrey.backhus@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JUAN CALIXTRO-PAEZ,<br><br>Defendant. | Case No. CR 24-00132-BLF<br><br>GOVERNMENT'S SENTENCING MEMORANDUM<br><br>Sentencing Date: September 29, 2026<br>Time: 9:00 a.m. |

## I. INTRODUCTION

In this case, the defendant pleaded guilty to felon in possession of ammunition. However, this is not the usual felon in possession case. Here, on September 13, 2023, the defendant was involved in a road rage vehicle incident in San Jose, California. The defendant brandished a loaded firearm and threatened the victim after the victim nearly collided with the defendant's car. As the court is aware, road rage incidents such as this one can be a dangerous and often violent, with consequences such as traffic violations, serious injury, and even death. Accordingly, protecting the public and deterrence in this case is important.

In the plea agreement, the parties agreed that the total offense level after acceptance in this case

should be 12. With a criminal history score of II, his Guidelines range is 12-18 months. In its Guidelines calculations, Probation includes a two-level increase for possession of a stolen firearm. PSR at ¶ 17. However, the parties did not include that increase in the plea agreement, so the government is not asking for this increase at sentencing.

In this case, Probation is recommending a probationary sentence, and the defense is requesting a sentence of time-served followed by a short period of supervised release. However, the government believes that, based on the aggravating facts of this case, a custodial sentence is required for both public safety and deterrence. Accordingly, the government recommends a sentence of 12 months of imprisonment followed by a three-year period of supervised release.

## II. FACTS

### A. Summary of Charged Conduct on September 13, 2023

On September 13, 2023, the victim was driving out of the parking lot of a grocery store. While defendant was making a U-turn in his vehicle, the victim nearly collided into the defendant's vehicle. The victim responded by honking at the defendant. The defendant then pulled alongside the victim, but the victim drove off to get away from the defendant's vehicle. The defendant followed the victim at a high rate of speed. The defendant ultimately pulled alongside the victim's vehicle for the second time and pointed a black firearm at the victim. The victim saw the firearm and quickly drove away and called the police to report the incident.

San Jose Police Department ("SJPD") officers responded to the area of Monterey Highway and Blossom Hill Road in San Jose for a report of a male, later identified as the defendant, brandishing a firearm at a victim. The defendant's vehicle was described as a newer silver Honda, last seen traveling southbound on Monterey Highway.

While on the way to the scene, an officer saw the suspect vehicle parked on the west side of Monterey Highway, just south of Ford Road, in front of a Caltrain station. The officer conducted a high-risk traffic stop on the vehicle because of the report that the defendant had brandished a firearm. Other officers also arrived on the scene.

Following the orders of SJPD officers, the defendant got out of his vehicle with his hands in the air. As one of the officers was placing the defendant into custody, the officer asked if there were any

weapons in the car and the defendant responded that there was a Glock under the driver's seat. Once the defendant was placed in the back of a patrol vehicle, an officer went back to the defendant's vehicle and saw a firearm protruding from under the driver's seat. An officer looked closer under the driver's seat and removed a loaded Glock 21 .45 caliber handgun from the vehicle. The officer then rendered it safe by removing the magazine and racking the slide to the rear. The officer determined there was not a round in the chamber, however there were thirteen rounds in the magazine that was seated in the magazine well. The ammunition consisted of thirteen rounds of miscellaneous .45 caliber ammunition bearing headstamps imprinted with "SIG 45 AUTO" and "AGUILA 45 AUTO."

The defendant waived his *Miranda* rights and agreed to talk to law enforcement. An officer then asked the defendant about the road rage incident and brandishing the firearm. The defendant said, "I fucked up big time. It sucks because I promised myself I would never ever ever go back to that place." The defendant continued by saying, "I was just trying to bring my wife some flowers and this mother fucker just... ugh Jesus Christ." The defendant continued by saying, "To be honest, he cut me off... he didn't cut me off, but he honked at me, he just got in my feelings. I was just trying to bring some flowers to my wife, that's it, that's all I can tell you, that's the truth. It's not like I know him from anywhere or have beef with him from anywhere, but he was super disrespectful." The defendant went on to explain that he put his hand up when he accidentally pulled in front of the victim so the victim could see "hey my bad." But the defendant said the victim was "super disrespectful and you know reactions." The defendant said he's been carrying the firearm for protection.

The defendant also stated that he had one more firearm, specifically a Glock 23 at his residence. The defendant referred to the firearm as being "fake," but clarified and said it was a real gun just did not have a serial number and referred to it as a "ghost gun." The defendant said the firearm was in his upstairs bedroom on the floor next to his bed.

Later that day, officers obtained a search warrant for the defendant's residence. Officers did not recover any additional firearms, but did recover the following:

-A Velcro holster attached to a black leather zippered pouch (located underneath the bed in the master bedroom);

-A handgun light (located on a shelf in the family room); and

-Ten (10) spent "Sig .45 Auto" casings (located in the rear center console of a BMW parked in the driveway.

In 2007, the defendant was convicted of a violation of Cal. Penal Code § 460 (A) (First Degree Burglary), for which he received a sentence of 4 years of imprisonment.

## III. DISCUSSION

### A. Sentencing Guidelines

The government's Guidelines calculations are as follows:

| | |
|---|---|
| Base Offense Level, U.S.S.G. 2K2.1(a)(6) | 14 |
| Acceptance of Responsibility, § 3E1.1 | -2 |
| Total Offense Level | 12 |
| Criminal History Category (3 points) | II |
| Total Range (in months) | 12-18 months |

### B. A 12-Month Sentence is the Reasonable and Appropriate Sentence in this Case

The government respectfully requests that the Court impose a sentence of 12 months of imprisonment. This sentence is supported by the § 3553(a) factors: in particular, the history and characteristics of the defendant, promoting respect for the law, the seriousness of the offense, deterring future criminal conduct, and protecting the public.

The circumstances of the instant offence are aggravating. In this case, the defendant was charged with being a felon in possession of ammunition. However, as stated above, this is not a typical felon in possession case where the defendant was pulled over for a vehicle code violation, and a loaded gun was recovered under his seat. Nor is it a case where a defendant was running from the police and threw a loaded firearm into the bushes. Here, the defendant actively brandished a firearm to threaten the victim during a road rage incident. Both road rage and brandishing a firearm carry extreme dangers, transforming a minor traffic dispute into a life-altering tragedy. Volatile driving conditions mixed with an immediate lethal threat pose massive physical, psychological, and legal consequences. This is violent and aggravating conduct.

Moreover, the defendant engaged in this conduct after being convicted of first-degree burglary in 2007 and serving a four-year sentence. However, this sentence did not deter the defendant from

engaging in the instant conduct. Accordingly, the government believes that another custodial sentence is appropriate to protect the public from further aggressive behavior by the defendant. The defendant's conduct on September 13, 2023, could have easily escalated and resulted in serious injury or even death. A custodial sentence would hopefully also deter the defendant from engaging in future armed road rage incidences.

At the same time, the government recognizes the defendant's substance abuse history, family responsibilities and rehabilitative efforts. That is, in part, why the government agreed to recommend a 12-month sentence. However, any mitigation is overcome the nature of the instant offense and the potential danger to the community.

## IV. CONCLUSION

The government believes that a 12-month sentence is appropriate. It reflects the seriousness of defendant's conduct and the need to protect the public. It will also provide, the government hopes, a level of specific deterrence for the defendant that his previous sentences have not. Accordingly, the government recommends a sentence of 12 months imprisonment followed by a three-year period of supervised release.

DATED: September 23, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

/s/
JEFFREY A. BACKHUS
Assistant United States Attorney